(No. 6188.  November 2, 1935.)

TOM BEECH, Respondent, v. AMERICAN SURETY COM-
PANY OF NEW YORK, Appellant.

[51 Pac. (2d) 213.]

Richards & Haga, for Appellant.

H. V. Creason and Walters, Parry & Thoman, for Respondent.

AILSHIE, J.—This action arises out of the case of *Bowman v. Adams*, decided by this court in 45 Ida. 217, 261 Pac. 679. That action was brought to enforce specific performance of a contract to sell a band of about 13,000 sheep and for injunction against loading and disposing of them. An order was issued restraining defendants from loading or shipping any sheep until further order of the court; injunction bond was filed in the sum of $1,000. Motion to dissolve the restraining order was denied and under order of court, continuing the injunction and increasing amount of bond, plaintiff filed a bond in the sum of $10,000. Later on the same day a receiver was appointed for the purpose of enforcing the injunction and on the next day, January 13, 1923, he assumed "control and possession" of the sheep "as a watchman and guardian, . . . . to see that they were not sold, transported and encumbered, shipped, or in any manner disposed of in violation of the terms and conditions of said injunction." Motions to dissolve the injunction and the order appointing receiver were denied by the court. Later the Western Bond and Mortgage Company was made a party defendant and on January 17th was allowed to take possession of the sheep on condition of filing a bond in the sum of $50,000, which it did. The sheep were sold the latter part of January.

In June, 1924, the original case of *Bowman v. Adams* was tried in the lower court and judgment was entered in favor of Bowman for $26,004. On appeal this court reversed the judgment on Nov. 21, 1927, and remanded the cause for new trial as to the defendants Adams and Beech. (*Bowman v. Adams, supra.*) Pursuant to the decision and *remittitur* of this court, and upon motion of the Western Bond and Mort-

gage Company, the district court on Jan. 21, 1928, entered its judgment dismissing the action as to the Mortgage Company and allowing its costs against the plaintiff in the sum of $994.50. On February 7th the cause was again tried in the district court and the court entered an order dissolving the injunction and dismissing the action with prejudice. In November, 1931, defendants Adams and Western Bond and Mortgage Company assigned to Beech all their right, property, claims, demands, etc., in the action. June, 1932, the case of *Beech v. United States F. & G. Co.* was tried and judgment was entered March, 1933, in favor of the plaintiff and against the surety company in the amount of $1,104.82 (which included costs and disbursements incurred) with interest. Upon appeal to this court the judgment was affirmed. (54 Ida. 255, 30 Pac. (2d) 1079, 92 A. L. R. 264.)

The present action is on the $10,000 bond given January 12, 1923, on continuance of the injunction, and was instituted on February 3, 1933. Answer was filed denying in general the allegations of the complaint. Later it was stipulated in open court that all testimony be submitted to the court without a jury. From a judgment rendered on December 8, 1933, for $2,990 and costs, against the surety on the injunction bond, defendant appeals.

The various assignments of error made by appellant and the gist of the entire argument all revolve about the single question as to whether the damage sustained by plaintiff in the present case was the result of the injunction, for the issuance of which the $10,000 bond was given on January 12, 1923. If the damage sustained was the ordinary and necessary result of the issuance of that restraining order, the defendant is liable. If, on the other hand, the loss resulted from the appointment of a receiver or other cause, the surety on the injunction bond would not be liable. The bond here sued upon was filed about 9 o'clock A. M., January 12, 1923. The trial court found and the evidence abundantly supports the finding,

"that, all of said sheep could have been and would have been sold on January 12, 1923, if it had not been for said

temporary injunction, . . . . That on account of said temporary injunction and the steps and proceedings taken in connection therewith and in support thereof, the said Adams and Beech were compelled to and did retain said sheep in their possession in said yards and continue to feed them until the same were released to them on the evening of January 17, 1923, by reason of and when the Western Bond & Mortgage Company posted an indemnity bond of $50,000.00 and the court ordered the sheep released from said temporary injunction; and that the said sheep, nor any of them, would have not been retained by Adams and Beech or fed, or any death losses sustained subsequent to January 11, 1923, if it had not been for said temporary injunction.''

The order appointing the receiver was made some time during the evening of January 12th and was served on Adams and Beech the morning of January 13th. The court further finds that the receiver was appointed

''for the purpose of enforcing said injunction and the terms and conditions thereof, . . . . That the said order appointing receiver was served upon the defendants in said former action in the early morning of January 13, 1923, at which time the said receiver assumed authority, control and possession over said sheep as a watchman and guardian, and that the said Burton continued as such receiver and in such possession and as such watchman and guardian of sheep continuously from said time until the sheep were delivered to the Western Bond and Mortgage Company, as hereinafter set forth.

''That during the time the said Burton was so continuing in the possession of said sheep, he did not feed the said sheep or purchase any feed or supplies therefor or exercise or control any supervision or perform any services in connection with the preservation, care, control or feeding of said sheep, nor did he sell or attempt to sell any of said sheep, nor did he do any act or thing other than to watch over said sheep to see that they were not sold, transported and encumbered, shipped, or in any manner disposed of in violation of the terms and conditions of said injunction.''

■ There is substantial evidence supporting these findings. The evidence shows that Adams and Beech believed that Bowman would not be able to furnish the $10,000 bond required by the order of the court within the time specified, and they accordingly negotiated for sale of the sheep for delivery on the 12th, provided the bond would not be given. They gave an order for delivery of the sheep on the 12th. This evidence is undisputed. Appellant, however, contends that such evidence was inadmissible and should be given no consideration for the reason that the contract for sale was not in writing as required by the Uniform Sales Law (sec. 62–104, I. C. A.) ; and that it could not have been enforced as against the vendee. The answer to this contention is that the present action is not one upon the contract of sale between the vendor and vendee. It does not involve either the validity or a breach of the contract of sale. The purpose in showing the sale was simply to establish the market value of the property at the time the injunction bond was given and served. The evidence was admissible, not to prove a binding contract of sale, which was unnecessary, but rather as tending to prove the market value of the property at the time the injunction issued. The fact that the contract was not executed in the form that it could have been enforced as between the vendor and purchaser was fully disclosed by the cross-examination of the witness and went to the weight to be given the testimony as to whether or not the owners of the property could have actually realized the price specified. Such evidence was subject to rebuttal by any facts or circumstances which the defendant could have presented.

■ While no error has been assigned against the rulings of the court in admitting evidence of the market value of the property on January 17th, when it was released and turned back to the custody of the mortgagee, Western Bond and Mortgage Company, and the owners, nevertheless appellant argues that the finding of the court, as to the market value of the property at that time, is unsupported by admissible and competent evidence. The real objection, however, goes to the testimony of the plaintiff Beech, as to the reasonable value

and market price of the sheep at that time. It is unnecessary for us to pass upon the question as to whether Beech qualified as an expert on values of such property, for the reason that he was one of the owners of the property; and under the rule prevailing in this state an owner may testify as to value without otherwise qualifying.

"The general rule, that to qualify a witness to testify as to market value, a proper foundation must be laid showing the witness to have knowledge upon the subject, does not apply to a party who is testifying to the value of property which he owns. The owner of property is presumed, in a way, to be familiar with its value, by reason of inquiries, comparisons, purchases and sales. The weight of such testimony is another question, and may be affected by disclosures made upon cross-examination as to the basis for such knowledge, but this will not disqualify the owner as a witness."

(*Rankin v. Caldwell*, 15 Ida. 625, 632, 99 Pac. 108; *Kellar v. Sproat*, 35 Ida. 273, 205 Pac. 894; *Thibadeau v. Clarinda Copper Min. Co.*, 47 Ida. 119, 129, 272 Pac. 254; *Garrett v. Neitzel*, 48 Ida. 727, 731, 285 Pac. 472; see, also, *Wicklund v. Allraum*, 122 Wash. 546, 211 Pac. 760, quoting from *Rankin v. Caldwell*.)

It is apparent from the findings of the court and the evidence supporting the same that the receiver was appointed in this case, *not for the purpose of handling and administering the estate, but purely as ancillary to the injunction and for the sole purpose of seeing to it that the injunction was obeyed.* He did not take actual possession of the property nor did he feed or care for the property. No provision was made for his procuring or paying for feed and labor to take care of and preserve the property; and his supervision and possession, so far as it extended, was confined and limited to that of a "watchman and guardian" of the property, and was so intended. The acts here complained of and the damages sustained were not the result of any action or lack of action on the part of the receiver. The damages resulted wholly from the issuance of the injunction. (*Bartram v. Ohio & B. S. R. Co.*, 141 Ky. 100, 132 S. W. 188.)

This case does not fall within the rule "that one cannot be legally damaged by being restrained from doing an illegal act" (*Guthrie v. Biethan,* 25 Ida. 706, 139 Pac. 718), as contended by appellant, for the reason that when the injunction issued no receiver had been appointed; and the owners of the property had a legal right to its possession and to sell and dispose of it. The property was already being cared for.

The damage sustained was well within the terms and obligation of the contract covered by the injunction bond. (*Bartram v. Ohio & B. S. R. Co., supra; Moore v. Maryland Casualty Co.,* 100 Cal. App. 658, 280 Pac. 1008; *Lehman v. McQuown,* 31 Fed. 138.)

We concur in the view expressed in the briefs, that the true measure of damages in this case is the difference between the value of the property on the date the bond was given and the injunction became effective, and the value on the date when the property was turned back to the mortgagee and the owners. The difficulty in determining the value of the property on the *latter date* gives rise to appellant's contention that much of the evidence introduced for the purpose of establishing that fact was improperly admitted and considered. The evidence discloses that there was no open market at the time for the sale of so large a band of sheep and that the market would absorb them only in limited numbers on any given date, so that it required a couple of weeks to market the entire band. In such a case the market value of the entire band will necessarily be made up from a composite of markets of different dates, as appears to have been done in this case. (*Taylor v. Capp,* 68 Ind. App. 593, 121 N. E. 37, 40; *Perry v. Reuss,* 204 Ky. 259, 264 S. W. 750.)

The fact that there is no present market value for any or all of a kind or class of property affords no protection to an intermeddler who damages or interferes with or converts it; nor does it preclude the owner from introducing evidence of its value for the uses and purposes to which it is adaptable. In this respect the rule adopted in fixing damages for the tak-

ing or injuring of real property applies equally to personal property. (*Idaho etc. Ry. Co. v. Columbia etc. Synod,* 20 Ida. 568, 582, 119 Pac. 60, 38 L. R. A., N. S., 497; *Portneuf-Marsh etc. Co. v. Portneuf Irrigation Co.,* 19 Ida. 483, 114 Pac. 19; 55 C. J. 1053; 22 C. J. 573, sec. 679.)

The item of $200 for attorney fees was improperly allowed for the reason that there was no showing made as to any particular sum paid for procuring the dissolution of the injunction, as distinguished from defending the action on the merits. The motion to dissolve was denied. Defendants did not appeal from that order and never had it reviewed by the appellate court. They defended the action on the merits and were finally successful; and while the judgment on the merits terminated the injunction, nevertheless it was brought about by reason of defeating plaintiff's cause of action on the merits. (*Miller v. Donovan,* 13 Ida. 735, 92 Pac. 992, 13 Ann. Cas. 259; *Ferrell v. Coeur d'Alene Trans. Co.,* 29 Ida. 118, 157 Pac. 946.) The injunction was not the main purpose of the original action but was only ancillary to the main action for specific performance of the contract. Further consideration of that question, however, is unnecessary here for the reason that the trial court found that the obligees under the injunction bond had sustained a total damage of $3,975.07; whereas, he only allowed judgment to be entered in their favor for the sum of $2,990 as prayed for in the complaint. The error, therefore, in computing the attorney fees as a part of the total damage has not prejudiced the appellant.

The judgment will be affirmed with costs to respondent.

Givens, C. J., and Budge, Morgan and Holden, JJ., concur.

Petition for rehearing denied.